**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

STEVEN BROWN,               )
                             )
       Plaintiff,          )
                             )
v.                         )       Case No. 4:14-CV-00288-NKL
                             )
CAROLYN W. COLVIN,     )
Acting Commissioner       )
of Social Security,        )
                             )
       Defendant.      )

## ORDER

Plaintiff Steven Brown seeks review of the Administrative Law Judge's (ALJ)

decision denying his application for disability insurance and supplemental security

income benefits under Titles II and XVI of the Social Security Act.   [Doc. 7].  For the

reasons set forth below, the ALJ's decision is reversed, and the case is remanded for

further consideration.

### I.      Background

Brown alleged an onset date of February 1, 2010, from the combined effects of

irritable bowel syndrome (IBS) with chronic diarrhea, degenerative joint disease, bilateral

knee pain, a baker cyst on his right knee, gastroesophageal reflux disease (GERD),

hepatitis, dyskinesia, a reoccurring umbilical hernia, lumbar disk bulge, depression,

uncontrolled high blood pressure, hypertensive heart disease, a fractured pubic ramus,

astigmatism, obesity, and diabetes.  [Tr. 27].  Although his list of impairments is

1

extensive, Brown's primary impairments are IBS, GERD, and a reoccurring umbilical hernia, which will be the focus of the summary of his medical history, below.

Brown has a long history of abdominal pain and digestive-related complications. Brown testified that he has severe, sudden, and frequent loose bowel movements which require him to use the restroom eight to nine times per day for ten to fifteen minutes at a time. [Tr. 34]. Brown frequently loses control of his bowels and if he cannot reach a restroom in time, he has accidents up to three times a day, even while at home. [Tr. 32]. Medical records from March 2009 through January 2013 consistently document complaints of frequent diarrhea and diagnose Brown with confirmed IBS. *See e.g.*, [Tr. 323, 330, 337, 405, 408-9, 429, 457, 464-65, 494, 510, 518, 524, 533, 554 568, 671, 679]. Brown testified that he has had bowel accidents for more than sixteen years, including while he was working. [Tr. 33]. When questioned about how he was able to maintain employment while having frequent accidents, Brown testified that he was frequently fired because he spent considerable time in the restroom or because he had to leave work to change his clothes and shower after an accident. [Tr. 32-34]. Brown's partner also stated in a Third Party Adult Function Report that Brown had frequent bowel movements that had increased in severity over the years. [Tr. 221]. While at his hearing before the ALJ in March 2013, Brown asked to use the restroom, and when he returned, he reported that he had an accident because the restroom was in use. [Tr. 28].

Brown also has a history of abdominal pain associated with GERD and a reoccurring umbilical hernia. *See e.g.*, [Tr. 405, 408, 429, 481, 494, 508, 510, 708]. His hernia was surgically repaired in 2009, [Tr. 35], and again in September 2011, [Tr. 392-

94].  A CT scan in December 2012 revealed another hernia.  [Tr. 506-7].  In February 2013, Brown's doctor remarked that his hernia was repaired and healing during their last visit, "but now appears to be back. ? Mesh is failing."  [Tr. 685].  Brown was scheduled to meet with his surgeon in March 2013.  Brown testified that lifting exacerbated the pain caused by his hernia.  [Tr. 506-7].

In April 2012, after reviewing some of Brown's medical records, a non-examining state agency consultant, Dr. Denise Trowbridge, M.D., filled out a "Disability Determination Explanation." [TR. 56-66].  Dr. Trowbridge opined that Brown could lift twenty pounds occasionally and ten pounds frequently.  He could stand or sit for six hours in an eight-hour day.  [Tr. 63].  Dr. Trowbridge observed that Brown's medical history confirms treatment for IBS and GERD, but that there were "no recent notes regarding" IBS.  [Tr. 60].  Dr. Trowbridge also acknowledged a history of hernias, but stated that Brown appeared to be fully recovered with no other complications.  *Id.*

After a hearing, the ALJ issued an unfavorable decision, finding at Step 5 of his determination that Brown could perform work that existed in significant numbers in the national economy, including as a cashier, mail clerk, and photocopy machine operator. [Tr. 19].  Brown had the following severe impairments: GERD, diabetes, IBS, hernia, and obesity. [TR-13].  Brown had the Residual Functional Capacity (RFC) to perform light work, including lifting and carrying ten pounds frequently and twenty pounds occasionally, and standing, walking, and sitting six hours in an eight-hour day. [Tr. 15]. He could not climb ladders, ropes or scaffolds.  He could only occasionally climb ramps

or stairs, stoop, kneel, crouch, crawl, balance, or bend. He could work in a low stress job with only occasional decision-making, changes, and job-related judgment. *Id.*

In coming to the conclusion that Brown was not disabled, the ALJ gave Dr. Trowbridge's opinion "significant weight" because her "findings and opinions are consistent with the underlying medical evidence." [Tr. 18]. Brown's partner submitted two third-party statements which describe Brown's stomach pain and IBS symptoms. [Tr. 220, 258]. The ALJ gave these reports "little weight" because "the medical evidence . . . does not support this level of headaches nor the fact that claimant can only be in one position for 15-20 minutes." [Tr. 18].

The ALJ also found Brown's testimony as to the intensity and persistence of his symptoms not entirely credible. [Tr. 16]. The ALJ stated that there were certain medical records where Brown did not report diarrhea and that there was an inconsistency between the medical records and Brown's testimony regarding the effectiveness of pain medication. There was also evidence that Brown exercised three to seven times per week to control his diabetes, which was inconsistent with disability. [Tr. 16-17]. The ALJ also remarked that Brown "had convinced himself that he is disabled, and he may not be highly motivated to seek employment." *Id.* [Tr. 17].

## II.     Discussion

Brown argues the ALJ's decision is not supported by substantial evidence in the record because the ALJ improperly relied on the opinion of Dr. Trowbridge, had no evidence addressing Brown's functional capacity at the time of the hearing, failed to

explain how the RFC determination accounted for Brown's severe impairments, and improperly discounted Brown's credibility.

### A. RFC Determination and Dr. Trowbridge's Opinion

"[O]nce a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). At Step 4 of the ALJ's disability determination, the ALJ concluded that Brown was unable to perform his past relevant work. [Tr. 17]. At that point, the burden of proof shifted to the Commissioner to prove that Brown had an RFC to do other kinds of work.

In forming his RFC determination, the ALJ gave significant weight to the medical opinion of Dr. Trowbridge, who completed a Physical RFC Assessment form. However, Dr. Trowbridge is a non-treating, non-examining physician. "The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." *Nevland*, 204 F.3d at 858. Despite numerous medical records over multiple years, signed by multiple doctors – for instance, Dr. Cassie Smith and Dr. Douglas Geehan – none of Brown's treating physicians was asked to comment on his functional limitations. *See id.* This is despite Brown's testimony that one of his treating doctors, Dr. Geehan, told him not to lift more than five pounds. [Tr. 36]. The ALJ has a duty to fully and fairly develop the record, and the ALJ should have sought an opinion

5

from one of Brown's treating physicians or ordered a consultative examination to assess Brown's RFC.

In addition, there is not substantial evidence to justify the ALJ's reliance on Dr. Trowbridge's report. First, Dr. Trowbridge provided no explanation for her conclusions. For instance, while determining that Brown could occasionally lift twenty pounds and frequently lift ten pounds or sit and stand for six hours per day, there is no indication as to how Dr. Trowbridge reached these conclusions, particularly because Dr. Trowbridge did not examine Brown. [Tr. 63, 71]. This deficiency is further compounded by the ALJ's failure to explain how, despite Brown's testimony to the contrary, Brown was capable of the functions outlined in the RFC. For example, despite finding that Brown suffered from severe impairments of GERD, diabetes, IBS, hernias, and obesity, the ALJ did not explain how the RFC accounted for these severe impairments. *See* SSR 96-8p. There is no limitation related to frequent breaks so that Brown could use the restroom or any explanation as to why frequent breaks would not be necessary with this severe impairment. There is no explanation as to how the lifting restrictions are appropriate given Brown's documented history of hernias. Instead, the ALJ relied on Dr. Trowbridge, who provided no explanation of her own.

Second, Dr. Trowbridge's opinion, issued in April 2012, fails to take into consideration subsequent medical records that are inconsistent with her opinion. For example, in her opinion, Dr. Trowbridge explains that Brown had IBS "in the past" but that "[t]here are no recent notes regarding the disease." [Tr. 71]. However, there were medical records documenting complaints from Brown about his IBS after April 2012,

including in July, August, November, and December 2012 and January 2013. [Tr. 494, 510, 518, 524, 533, 568, 679]. Dr. Trowbridge also noted that Brown appeared to be fully recovered from his hernia, [Tr. 71], but a CT scan in December 2012 revealed another hernia, [Tr. 506-7], and Brown's doctor remarked that his hernia repair appeared to be failing in February 2013, [Tr. 685]. The subsequent medical records about Brown's IBS and reoccurring hernia are significant because Brown alleged difficulty lifting due to stomach pain and diarrhea, an allegation Dr. Trowbridge dismissed presumably based on her opinion that Brown no longer suffered from diarrhea or a hernia. [Tr. 71].

The Commissioner argues that Dr. Trowbridge's opinion is supported by the medical evidence in the record because records show that Brown had "relatively mild" findings, no evidence of neuropathy or radiculopathy, mild problems in his back and hips, and normal strength and range of motion. However, none of these findings relate to Brown's primary complaints of IBS, GERD, and hernias. Further, some of the records cited by the Commissioner actually reveal complaints of stomach pain and diarrhea. *See e.g.*, [Tr. 313-315, 554-57]. The Commissioner also points to evidence that Brown is able to exercise on a daily basis and perform some household chores. However, Brown's ability to perform low impact exercise such as walking and swimming does not necessarily negate his testimony that he makes frequent trips to the restroom and suffers from frequent accidents, which would require him to leave work. The ability to exercise for up to forty minutes is not substantial evidence of the ability to maintain a full-time work schedule.

The ALJ's RFC determination is not supported by substantial evidence, and remand is required. On remand, the ALJ shall seek an opinion from at least one of Brown's treating physicians or an examining consultant as to Brown's physical ability to function in the workplace, including weight lifting limitations and bathroom breaks. The ALJ shall then determine an RFC based on the entire record and, consistent with SSR 96-8p, specifically explain how the RFC accounts for Brown's severe impairments.

## B. Brown's Credibility

The ALJ also determined that Brown's allegations regarding the persistence and severity of his impairments were not entirely credible. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole, but an ALJ who rejects a claimant's subjective complaints must make an express credibility determination and explain the reasons for discrediting the complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). The ALJ pointed to at least four inconsistencies within the record to discount Brown's testimony. However, each of these perceived inconsistencies is not supported by substantial evidence.

First, the ALJ remarked that despite complaints of "constant, debilitating diarrhea," the evidence does not support this allegation because there were some medical records where Brown did not complain of diarrhea. [Tr. 17]. The ALJ concluded that "[a]t most, the evidence would support a finding that claimant has only occasional episodes of severe diarrhea." *Id.* Putting aside that a failure to complain during a treatment session is different than a record indicating that an impairment is resolved, the narrative sections of both records cited by the ALJ actually reflect an ongoing problem

8

with "recurrent diarrhea from . . . IBS." [Tr. 671, 708]. The Commissioner has pointed to no other medical opinion supporting a finding of "only occasional episodes of severe diarrhea." The Commissioner pointed to an October 2010 record stating that Brown's diarrhea "had virtually stopped," [Tr. 301], but several medical records after October 2010 document continued problems with diarrhea.

Second, the ALJ remarked that Brown's ability to exercise is inconsistent with a finding of disability. But as discussed above, his reported exercise was in compliance with his doctor's recommendation and is not necessarily inconsistent with his allegations of disability – particularly IBS.

Next, the ALJ observed that a treatment note stating that Brown's abdominal pain improved with medication and sitting up contradicted Brown's testimony that medication does not reduce his pain. [Tr. 16]. However, Brown testified that when he is in pain, he takes pain medication. [Tr. 35]. He did not testify that the pain medication for his stomach pain made it worse, but rather, "some IBS medicine . . . seems like it makes the stomach worse." [Tr. 44]. The medical report cited to by the ALJ only refers to the effectiveness of medication for abdominal pain, not the effectiveness of Brown's IBS medication, and so there is no inconsistency in Brown's testimony. [Tr. 670].

Finally, the ALJ acknowledged that Brown had a "fairly good work history," but stated that Brown "had convinced himself that he is disabled, and he may not be highly motivated to seek employment." [Tr. 17]. The ALJ did not cite to any support for this statement, and the Court could find none. To the contrary, the record supports a finding that Brown had a consistent work history, even while suffering from IBS, but lost several

9

jobs after increased pain and IBS symptoms.  The Commissioner argues that Brown's work history supports the ALJ's decision to discount Brown's credibility, because Brown worked while experiencing IBS symptoms for several years.  However, the ALJ did not give this reason in discounting Brown's testimony, and regardless, both Brown and his partner stated that his IBS symptoms worsened.  If anything, Brown's continued attempts to work is evidence of a motivation to work but an inability to do so.

The ALJ's credibility analysis is not supported by substantial evidence in the record.  On remand, the ALJ should conduct a credibility analysis consistent with the entire record and not only those portions of the record that support a finding that Brown is not disabled.

## III.    Conclusion

For the reasons set forth above, the ALJ's decision is reversed, and the case is remanded for further consideration consistent with this Order.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  December 1, 2014
Jefferson City, Missouri

10